Laura Berglan (AZ Bar No. 022120)
Heidi McIntosh* (CO Bar No. 48230)
Thomas Delehanty* (CO Bar No. 51887)
EARTHJUSTICE
633 17th Street, Suite 1600
Denver, CO 80202
(303) 623-9466
lberglan@earthjustice.org
hmcintosh@earthjustice.org
tdelehanty@earthjustice.org

Roger Flynn* (CO Bar No. 21078)
Jeffrey C. Parsons* (CO Bar No. 30210)
WESTERN MINING ACTION PROJECT
P.O. Box 349; 440 Main St., #2
Lyons, CO 80540
(303) 823-5738
roger@wmaplaw.org
jeff@wmaplaw.org

*Attorneys for Plaintiff Hualapai Tribe*          *Admitted Pro Hac Vice*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Hualapai Indian Tribe of the Hualapai Indian Reservation, Arizona,<br><br>    *Plaintiff*,<br><br>v.<br><br>Debra Haaland, et al.,<br><br>    *Defendants*,<br><br>and<br><br>Arizona Lithium, Ltd.,<br><br>    *Intervenor Defendants.* | No. CV-24-08154-PCT-DJH<br><br>**PLAINTIFF HUALAPAI TRIBE'S POST-HEARING BRIEF** |

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

I.     The Hualapai Tribe Is Likely to Succeed on the Merits. .................................... 1

    A.    The NHPA Has Distinct Requirements That Have Not Been Met. .............................. 1

    B.    BLM's Failure to Consider a Reasonable Range of Alternatives Violated NEPA ....... 3

    C.    BLM Failed to Take a Hard Look at Ha'Kamwe's Source and Project Impacts. ........ 3

II.    The Project Will Irreparably Harm the Tribe and Its Members. ........................ 4

    A.    The Project Would Impair Tribal Members' Practices and Use of the Area. ............... 5

    B.    The Project Risks Harming or Destroying Ha'Kamwe's Hydrology. .......................... 5

III.   The Balance of Equities and Public Interest Favor an Injunction. ..................... 6

IV.   Bond. .................................................................................................................. 7

CONCLUSION ................................................................................................................ 7

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adler v. Lewis*,
    675 F.2d 1085, 1096 (9th Cir. 1982) ............................................................................ 2

*All. for the Wild Rockies v. Cottrell*,
    632 F.3d 1127 (9th Cir. 2011) ............................................................................. 1, 4, 5

*Ayers v. Espy*,
    873 F. Supp. 455 (D. Colo. 1994) ................................................................................ 3

*Chalk v. U.S. Dist. Court Cent. Dist.*,
    840 F.2d 701 (9th Cir. 1988) ....................................................................................... 6

*In re Focus Media Inc.*,
    387 F.3d 1077 (9th Cir. 2004) ..................................................................................... 1

*Idaho Sporting Cong., Inc. v. Rittenhouse*,
    305 F.3d 957 (9th Cir. 2002) ....................................................................................... 3

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) ....................................................................................................... 4

*Preservation Coal. v. Pierce*,
    667 F.2d 851 (9th Cir. 1982) ....................................................................................... 2

*Quechan Tribe of Fort Yuma Indian Rsrv. v. U.S. Dep't of Interior*,
    755 F. Supp. 2d 1104 (S.D. Cal. 2010) ....................................................................... 5

*Robertson v. Methow Valley Citizens Council*,
    490 U.S. 332 (1989) ..................................................................................................... 3

*Small v. Avanti Health Sys., LLC*,
    661 F.3d 1180 (9th Cir. 2011) ..................................................................................... 4

*Sovereign Inupiat for a Living Arctic v. U.S. Bureau of Land Mgmt.*,
    No. 3:20-cv-00290-SLG, 2021 WL 454280 (D. Alaska Feb. 6, 2021) .................... 5

*W. Watersheds Project v. Abbey*,
    719 F.3d 1035 (9th Cir. 2013) ..................................................................................... 3

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) .................................................................................................................. 1

**Regulations**

36 C.F.R.
   § 800 ..................................................................................................................................... 1
   § 800.1 .................................................................................................................................. 2
   § 800.4 ............................................................................................................................... 1, 2
   § 800.6 .................................................................................................................................. 2
   § 800.8 .................................................................................................................................. 2
   § 800.16 ................................................................................................................................ 1

40 C.F.R.
   § 1501.2 ................................................................................................................................ 2
   § 1508.8 ................................................................................................................................ 2

**Statutes**

54 U.S.C.
   § 306108 ............................................................................................................................... 1
   § 306114 ............................................................................................................................... 2

**Other Authorities**

Transcript of Hearing on Motion for Preliminary Injunction (Sept. 17,
   2024) ........................................................................................................................ 4, 5, 6, 7

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) .................................................................................................................. 1

**Regulations**

36 C.F.R.
   § 800 ..................................................................................................................................... 1
   § 800.1 .................................................................................................................................. 2
   § 800.4 ............................................................................................................................... 1, 2
   § 800.6 .................................................................................................................................. 2
   § 800.8 .................................................................................................................................. 2
   § 800.16 ................................................................................................................................ 1

40 C.F.R.
   § 1501.2 ................................................................................................................................ 2
   § 1508.8 ................................................................................................................................ 2

**Statutes**

54 U.S.C.
   § 306108 ............................................................................................................................... 1
   § 306114 ............................................................................................................................... 2

**Other Authorities**

Transcript of Hearing on Motion for Preliminary Injunction (Sept. 17,
   2024) ........................................................................................................................ 4, 5, 6, 7

On September 17, 2024, this Court conducted a hearing on the Hualapai Tribe's motion for a preliminary injunction (Doc. 11). The hearing, together with the filings on the matter, demonstrate that the Tribe meets the four-part test under *Winter* for injunctive relief. *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008).

**I.    The Hualapai Tribe Is Likely to Succeed on the Merits.**

To establish a likelihood of success on the merits, a plaintiff "must show a 'fair chance of success.'" *In re Focus Media Inc.*, 387 F.3d 1077, 1086 (9th Cir. 2004) (citing *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988) (en banc)). A preliminary injunction is appropriate when the plaintiff demonstrates that "serious questions going to the merits were raised." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011) (citing *Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008)). As shown below, the Tribe meets and exceeds this threshold.

   A.   <u>The NHPA Has Distinct Requirements That Have Not Been Met.</u>

The National Historic Preservation Act ("NHPA") requires a four-step process to consider the effects of projects that agencies carry out on historic properties. 54 U.S.C. § 306108; 36 C.F.R. § 800. The first step requires BLM to initiate consultation with interested parties, including tribes, to determine whether historic properties could be affected by a project. 36 C.F.R. § 800.4. The second step includes defining the area of potential effects ("APE"), which should include "the geographic area … within which an undertaking may directly or indirectly cause alterations in the character or use of historic properties. 36 C.F.R. § 800.16(d). BLM erred during this step by excluding Ha'Kamwe' from the APE. Ha'Kamwe' is a historic property that will be affected by this Project. In erroneously determining the APE, BLM failed to recognize the Tribe's expertise with respect to impacts on its own cultural resources, in violation of 36 C.F.R. § 800.4(c)(1), and as pointed out to BLM by the Advisory Council on Historic Preservation ("ACHP"), the expert agency charged by Congress with overseeing the NHPA. Indigenous Knowledge is a "special expertise" recognized in 36 C.F.R. § 800.4(c)(1) and is the best available science. PX10_002 (Doc. 11-7). BLM's error early in the NHPA process then

led to its erroneous finding that the Project would not affect any historic properties pursuant to 36 C.F.R. § 800.4(d)(1). Clarke Decl. ¶ 8 (Doc. 11-3); *see also* PX3 (Doc. 11-7).

BLM's finding of no adverse effects on historic properties prematurely ended the Section 106 process, robbing the Tribe of the opportunity to participate in the resolution of adverse effects. This final step of the Section 106 process results in a legally binding agreement that establishes how the agency will resolve adverse effects on historic properties. 54 U.S.C. § 306114; 36 C.F.R. § 800.6(c). This failure is not, and cannot be, remedied in the separate and distinct National Environmental Policy Act ("NEPA") process.[1] The NHPA process is intended to be a proactive, solution-oriented process and requires thorough agency consideration of historic properties. 36 C.F.R. § 800.1; 40 C.F.R. § 1501.2

In contrast, NEPA requires that agency decisions are made based on a careful evaluation of the environmental impacts of a project, not just the effects on historic properties. 40 C.F.R. § 1508.8. If, as in this case, the agency determines that a project will not have a significant impact, it simply releases a final EA and decision document, usually approving a project. The decision is not negotiated among interested parties, and the agency need not seek resolution of adverse effects on historic properties, as the NHPA requires.

Thus, BLM may not rely upon the NEPA process to excuse its failures in the NHPA process. The evaluation of effects under one statute does not satisfy the duty to evaluate those same effects under the other. *Preservation Coal. v. Pierce*, 667 F.2d 851, 858–59 (9th Cir. 1982); *Adler v. Lewis*, 675 F.2d 1085, 1096 (9th Cir. 1982).

---

[1] While an agency can "coordinate" its NEPA and NHPA processes, 36 C.F.R. § 800.8, the NHPA analysis must still be "consistent with the standards and criteria of §§ 800.4 through 800.5," *id.* § 800.8(c)(1)(ii). For example, if, as here, the agency finds under NEPA "that the effects of an undertaking on historic properties are adverse, the agency official shall develop measures . . . to avoid, minimize, or mitigate such effects in accordance with" the NHPA. *Id.* § 800.8(c)(4).

2

B. <u>BLM's Failure to Consider a Reasonable Range of Alternatives Violated NEPA.</u>

Alternatives to the proposed action are the heart of the environmental analysis required under NEPA. "The existence of a viable but unexamined alternative renders an [EA] inadequate." *W. Watersheds Project v. Abbey*, 719 F.3d 1035, 1050 (9th Cir. 2013) (citing *Westlands Water Dist. v. U.S. Dep't of Interior*, 376 F.3d 853, 868 (9th Cir. 2004). A less harmful alternative should be considered if it is feasible. *Ayers v. Espy*, 873 F. Supp. 455, 473 (D. Colo. 1994).

The EA unlawfully failed to consider a reasonable range of alternatives. Had the BLM properly completed the NHPA process, those findings could have informed the NEPA process, including the range of alternatives. Instead, BLM constrained the choices to only two alternatives: approving or denying the proposed exploration plan in full, without consideration of middle-ground alternatives that better protect tribal and environmental interests. *See* PX11_007–14 (Doc. 15-1).

Because of the significant concerns the Tribe raised throughout the Project process, *see* PX3–4, 6, 8–10, 14 (Doc. 11-7), BLM was required to evaluate an alternative that avoids impacts on Ha'Kamwe'. Reasonable and feasible options exist that BLM should have explored. *See e.g.*, PX6_018 (Doc. 11-7). BLM's explanation for not including an assessment of these alternatives was arbitrary and capricious and contrary to the record.

C. <u>BLM Failed to Take a Hard Look at Ha'Kamwe's Source and Project Impacts.</u>

NEPA requires that agencies take a "hard look" at a project's environmental consequences. *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989) (citation omitted). A "hard look" includes "considering all foreseeable direct and indirect impacts." *Idaho Sporting Cong., Inc. v. Rittenhouse*, 305 F.3d 957, 973 (9th Cir. 2002) (citation omitted).

BLM failed to satisfy this obligation when approving the Project. Because of the critical importance of Ha'Kamwe' to the Tribe's cultural and traditional values, the Tribe requested that BLM provide valid hydrological evidence that the Project would not harm

the spring's source. *See* PX4, PX8, and PX9 (Doc. 11-7). However, BLM did not require Arizona Lithium, Ltd. ("AZL") to conduct any studies to ensure that drilling activity will not impair the spring, and BLM conducted no studies itself. *See* Prelim. Inj. Hearing Tr. 229:16–19 ("Tr."). Instead, BLM relied on a single study—focused on a different project and with limited test holes—to conclude that this Project would not impact Ha'Kamwe'. *See* PX11 at 20–22 (Doc. 15-1). However, that study was inapplicable to the Project. It focused on only proving that a sufficient volume of groundwater existed to satisfy the demand of a proposed electrical power-generating plant. PX17 (Doc 11-7). It did not attempt to determine the source of groundwater for Ha'Kamwe'—the central question here. *Id*. The EA's findings regarding Ha'Kamwe's groundwater hydrology were not supported by the evidence in the record.

The Tribe provided BLM with more recent analysis, the only study focused on the source of Ha'Kamwe', that reached a different conclusion. It found that "[a]vailable data indicate that any activity within the spring aquifer and recharge area, including exploration drilling, threatens the flow, temperature, and chemistry of the Ha'Kamwe' spring." PX6_001 (Doc. 11-7). While this study was presented to BLM well before its decision, BLM did not address it. BLM also neglected to address specific, relevant issues the Tribe raised—like the presence of faults, fractures, and lineaments, which the EA does not so much as mention. BLM thus failed to "examine the relevant data and articulate a satisfactory explanation for its action, including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citation omitted). This faulty analysis does not represent the hard look required under NEPA.

**II.   The Project Will Irreparably Harm the Tribe and Its Members.**

Under *Winter*, a party seeking a preliminary injunction must show likelihood of irreparable harm. *All. for the Wild Rockies*, 632 F.3d at 1131. The movant "need not prove that irreparable harm is certain or even nearly certain." *Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1191 (9th Cir. 2011). Generally, "[d]amage to or destruction of any"

cultural or religious sites "easily" meets this requirement. *Quechan Tribe of Fort Yuma Indian Rsrv. v. U.S. Dep't of Interior*, 755 F. Supp. 2d 1104, 1120 (S.D. Cal. 2010).

Here, the Tribe has shown that it faces at least two forms of immediate and irreparable harm if the Project moves forward: (1) impairment of cultural practices and (2) damage to Ha'Kamwe's hydrology.

### A. The Project Would Impair Tribal Members' Practices and Use of the Area.

The Tribe's evidence shows that AZL's drilling activities would impair, or even preclude, cultural practices. For example, truck traffic and noise from Phase 1 and Phase 2 exploration activities distracted young men from the teachings of a Hualapai spiritual leader while he performed a song that may be sung only once: "[o]nce it's done, it's done." Tr. 118:105–119:6. This (and other) testimony is consistent with BLM's own finding that the Project will cause "disruption of cultural practices" at and around the spring. PX11_018 (Doc. 15-1).

Though the Project is temporary, these harms are irreparable and long-lasting. Hualapai members hold events like funerals and coming-of-age ceremonies at the spring, which, by their nature, are momentous, deeply personal, and tethered to a specific point in time. Tr. 113:18–23. This impairment of the Tribe's use and enjoyment of the spring warrants injunctive relief. *See All. for the Wild Rockies*, 632 F.3d at 1135 (finding irreparable harm due to impairment of members' "ability to view, experience, and utilize the areas in their undisturbed state"); *Sovereign Inupiat for a Living Arctic v. U.S. Bureau of Land Mgmt.*, No. 3:20-cv-00290-SLG, 2021 WL 454280, at *3 (D. Alaska Feb. 6, 2021) (finding irreparable harm from blasting and road construction in "traditional use areas" where tribal members live, hunt, and harvest).

### B. The Project Risks Harming or Destroying Ha'Kamwe's Hydrology.

Additionally, the Project is likely to disrupt Ha'Kamwe's flows. The record shows that at least some portion of Ha'Kamwe's water comes from shallower parts of the aquifer complex. Tr. 64:12–15; 69:21–22.; *see also* PX19_060 (finding Ha'Kamwe has a "mix[ture] of long term circulated waters [and] younger meteoric groundwater"). Though

5

Federal Defendants and AZL contest this conclusion, they fail to identify any studies affirmatively finding that shallower groundwater does not contribute to Ha'Kamwe's flows. Instead, studies like Manera 2000 (Doc. 11-7; PX17) are silent on the issue. *See* Tr. 222:14–15. BLM itself declined to say that shallow groundwater does not partially supply Ha'Kamwe's water. PX11_024 (Doc 15-1).

Furthermore, the record demonstrates that numerous faults, fractures, and lineaments extend throughout the Project site. *E.g.*, PX6_004 (Doc. 11-7); AZL1_00152. Some of Ha'Kamwe's water likely moves through these geological features, so drilling into or through them would harm the spring. Tr. 70:20–73:4. Indeed, a Hualapai member testified that two fissures and increased off-gassing (bubbles) have appeared at Ha'Kamwe' since the Phase 3 bulk sampling activities, Tr. 44:18–19; 45:7–19—effects consistent with disruptions to the spring's hydrogeology from drilling, Tr. 72:9–11.

BLM's purported mitigation measures do not eliminate this likelihood of harm. The measures require nothing more than compliance with existing state-law plugging requirements, which hinge on whether water is initially encountered during drilling. But the record shows that holes with a depth and target formation similar to the Project's can "appear[] dry" during drilling but fill with water "after 24 hours." PX17_016 (Doc. 11-7). Thus, AZL will likely fail to implement appropriate mitigation measures due to false negatives: concluding that a hole is dry during drilling, only to have water migrate into the borehole afterward. Indeed, AZL encountered "moist" soil during bulk sampling yet deferred reclamation to "a later date." AZL32_00002; Tr. 198:4–9.

In sum, the record evidence shows that the Project is sufficiently likely to impair Ha'Kamwe's flows and disrupt significant cultural practices. The Tribe has established that it is likely to suffer irreparable harm absent an injunction.

**III. The Balance of Equities and Public Interest Favor an Injunction.**

The balance of equities and public interest also weigh in favor of granting a preliminary injunction. "The basic function of a preliminary injunction is to preserve the status quo pending a determination of the action on the merits." *Chalk v. U.S. Dist. Court*

6

*Cent. Dist.*, 840 F.2d 701, 704 (9th Cir. 1988). The Project is expected to take 18 months, and perhaps as little as 12 months. Letter from Maria Irwin, Project Manager, NTEC, to Sherry Parker, Chairwoman, Hualapai Tribe, at 3 (July 5, 2024) (Doc. 15-18). Thus, by the time this case is decided on its merits, the Project will likely be complete (or nearly so), and its irreparable environmental and cultural harms will have occurred. In contrast, AZL faces mere delay: if the Court finds that BLM lawfully approved the Project, drilling activities can resume. This significant imbalance of harm—paired with the general principle of avoiding environmental injury through injunctive relief, *see* Pl.'s Mot. for TRO followed by Prelim. Inj. at 15–16 (Doc. 11) ("TRO Mot.")—tips the equities strongly in favor of granting an injunction.

The public interest favors an injunction too, as an injunction preserves a recognized cultural site, and Arizona's groundwater resources in their current state, until the Court determines whether BLM acted lawfully in approving the Project. Both the balance of equities and the public interest weigh in favor of granting an injunction.

## IV.   Bond.

Courts routinely waive the bond requirement or impose a nominal bond in cases involving Indian tribes or non-profits who would otherwise effectively be denied access to judicial review. *See* TRO Mot. at 17 (Doc. 11) (collecting cases).

Here, the Tribe's Chairperson testified that the Hualapai Tribe is unable to pay a large bond and that any bond payment would come directly from resources needed to provide important governmental services. Tr. 136:13–19. Given the comparative harms and the significant public interest in protecting environmental and cultural resources, the Tribe should not be required to pay a significant bond to secure a preliminary injunction.

## CONCLUSION

For the foregoing reasons, the Tribe requests that this Court enter a preliminary injunction until it has decided the Tribe's claims, barring Defendants and all persons from taking any action implementing or relying on BLM's decision to authorize the Project.

7

Respectfully submitted this 24th day of September 2024.

/s/ Laura Berglan
Laura Berglan (AZ Bar No. 022120)
Heidi McIntosh* (CO Bar No. 48230)
Thomas Delehanty* (CO Bar No. 51887)
EARTHJUSTICE
633 17th Street, Suite 1600
Denver, CO 80202
(303) 623-9466
lberglan@earthjustice.org
hmcintosh@earthjustice.org
tdelehanty@earthjustice.org

Roger Flynn* (CO Bar No. 21078)
Jeffrey C. Parsons* (CO Bar No. 30210)
WESTERN MINING ACTION PROJECT
P.O. Box 349; 440 Main St., #2
Lyons, CO 80540
(303) 823-5738
roger@wmaplaw.org
jeff@wmaplaw.org

*Attorneys for Plaintiff*

*Admitted Pro Hac Vice